THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUDOLPH LUCIEN, Defendant-Appellant.

Second District   No. 80—653

Opinion filed September 10, 1982.—Supplemental opinion filed on denial of rehearing October 26, 1982.

G. Joseph Weller and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, and Rudolph Lucien, *pro se*, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Following a bench trial defendant, Rudolph Lucien, was convicted of one count of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a)); one count of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)); two counts of intimidation (Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(1)); five counts of aggravated kidnaping (Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3), (5)); and five counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). He was thereafter sentenced to concurrent extended terms of imprisonment of 60 years for rape, armed robbery and for each armed violence conviction; 30 years for each aggravated kidnaping conviction; and 10 years for each intimidation con-

viction. In his brief presented by the appellate defender, defendant contends he was not proved guilty beyond a reasonable doubt; that certain judgments entered for rape, armed robbery, intimidation, aggravated kidnaping and armed violence constitute prohibited multiple convictions for the same acts; and, that imposition of extended terms of imprisonment was improper. Defendant has also filed a brief *pro se* raising issues that the grand jury proceedings violated his right to due process; bail was excessive; he was denied a speedy and fair trial; and, that the trial court erred in ruling on certain of defendant's motions.

At trial the prosecutrix, Nancy _____, testified that in the early afternoon of December 12, 1979, she was in her apartment in Lisle and responded to a knock on her door. A man, who she subsequently identified as defendant, told her he lived in a nearby apartment and, as he was moving, had a list of articles for sale. He did not identify himself and she had never seen him before. She went to his apartment and, after purchasing a plant, returned to her apartment. Defendant came to her apartment again at 2 p.m. and told her she could have his unsold plants. She returned to his apartment taking her purse containing her wallet and checkbook. After she entered he closed the door and grabbed her, throwing her to the floor. He told her to cooperate and not to make an outcry or struggle. She told him she was pregnant and did not want to lose her husband and baby. Defendant removed her clothing and tied her hands and feet with neckties, then put her in the bedroom closet. He left briefly and returned carrying a knife. He removed her from the closet, untied her and began removing his clothes. She ran for the door but he caught her by the hair and beat her. Defendant retied her hands, told her to cooperate or be killed and had sexual intercourse with her.

The prosecutrix testified further that defendant then threatened her with his knife and required her to sign a check from her checkbook made out for $3,000. She advised him her husband would soon be home and looking for her as she had left her apartment unlocked. Defendant said he would lock her apartment door and she was to remain quiet or be killed. When she heard defendant's apartment door close, however, she left by jumping from its second floor balcony to the ground below and ran, naked, across the parking lot to the apartment of another tenant who called the police. She was crying and said she had been raped.

Witnesses staying in an apartment below defendant's heard a scream and saw a bloody, unclothed girl land on the patio and run across the parking lot. They followed her with clothing to the apart-

ment she entered; the girl was lying on a couch and said she had been raped.

Officer William Selby testified he responded to a call to the apartment complex and saw the prosecutrix lying on a couch covered with a blanket. She had marks on her face and was bleeding from her nose. She was crying and said she had been raped and described her assailant, who she identified in trial as defendant.

The prosecutrix' husband arrived and she was taken to a hospital where on examination she was found to have a cut above her nose, black eyes, misplaced teeth with facial nerve damage, extensive body bruises and abrasions and a large clump of loose hair. Semen was found in her vagina.

Officer Selby recalled he had arrested defendant five days earlier and defendant had given that apartment as his address. The prosecutrix identified defendant as her assailant in a photographic lineup at the hospital and a search warrant was obtained for his apartment. Officers there recovered the prosecutrix' clothing, identification papers, a torn check which had been in her purse, bloody bed linen and knotted neckties. Her purse and checkbook were located the next day in a ditch in Lockport.

Other evidence was presented by the State that defendant and a Susan Lucien were lessees of the apartment in which the incidents took place. Defendant's employer testified he had taken sick days off for December 10-13 and on December 14 called to advise he was taking a leave of absence because he wife had died and he needed time away. Defendant left for California December 14 where he was arrested on January 2, 1980. After waiving extradition he was returned to Illinois for trial which commenced June 4, 1980.

Defendant testified in trial that a sexual relationship had existed between himself and the prosecutrix for several weeks. He stated that on the day in question she rode to Chicago with him in the morning and later that day came to his apartment and voluntarily engaged in sex with him; that she had asked him to tie her up with neckties after reading bondage magazines in his apartment. He testified further that she then informed him she was married and might be pregnant with his child. He was leaving his apartment to tell her husband about their affair when she became hysterical, making it necessary for him to slap her face. She fell backwards and tripped over an electric cord falling face first on a nightstand causing her injuries. Defendant stated he believed she had arranged this incident because of the possibility she might give birth to a black baby which she could only explain to her husband as conceived by rape. He denied that he had

committed rape or the other offenses charged.

Defendant also testified that while she was in his apartment two friends of his stopped and visited for awhile. He said he had told her to get her clothing out of the living room, but as they were leaving she came out wearing defendant's hooded robe. Sheldon Wicks testified he had known defendant for 10 years, having met him in Stateville. He and Franklin Thomas arrived at defendant's apartment at 2 p.m. on December 12 and visited. As they were leaving a girl came from the bedroom wearing a robe; she was white with brown hair and he assumed she was Susan Wydra with whom defendant had been living. Franklin Thomas testified that as they were leaving he saw a white girl with brown hair wearing a robe. Thomas also testified he had been convicted of armed robbery and had known defendant for 14 years, but would not lie for him.

Randy Lucien, defendant's brother, testified that in November he had invited defendant to spend Christmas with him in Los Angeles and defendant arrived there December 15.

Willie Joe Lester testified that on December 12 he had seen defendant in Chicago with a white woman who had brown hair. William Jefferson testified that in November he saw defendant get out of his car near his apartment and identified a photograph of the prosecutrix as the woman he saw in defendant's car.

We consider first whether the evidence was sufficient to sustain the substantive convictions for rape, armed robbery, aggravated kidnaping and intimidation.

Defendant essentially argues that his testimony regarding a consensual relationship with the prosecutrix was corroborated by other witnesses and that her account of the events occurring on December 12 was improbable.

It is the function of the trial court, sitting as trier of the facts, to determine the credibility of the witnesses, the inferences to be drawn and the weight and quality of the evidence. (*People v. Perez* (1981), 94 Ill. App. 3d 377, 381, 418 N.E.2d 969, 972, *appeal denied* (1981), 85 Ill. 2d 572; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 68, 405 N.E.2d 1121, 1129, *appeal denied* (1980), 81 Ill. 2d 597; *People v. Lucien* (1978), 66 Ill. App. 3d 280, 289, 383 N.E.2d 735, 742.) While a reviewing court has a special duty to carefully review the evidence in cases involving rape, this does not permit it to simply substitute another view of the evidence. *People v. Utinans* (1977), 55 Ill. App. 3d 306, 314, 370 N.E.2d 1080, 1086, *appeal denied* (1978), 71 Ill. 2d 601.

■ In this case the testimony of the prosecutrix was clear, convincing and corroborated by other evidence. (See *People v. Lee* (1961),

23 Ill. 2d 80, 177 N.E.2d 199.) She promptly complained to the police and others after escaping from defendant's apartment by jumping from the second floor balcony in order to get away from him. (*People v. Trejo* (1976), 40 Ill. App. 3d 503, 509, 352 N.E.2d 68, 72.) Her injuries and extreme emotional upset were apparent tending to refute defendant's assertion she had consented to his conduct. (*People v. Kilgore* (1976), 39 Ill. App. 3d 1000, 1003, 350 N.E.2d 810, 812, *appeal denied* (1976), 63 Ill. 2d 560.) The trial court also took into consideration photographs in evidence and her clothing and certain blood-stained items found in defendant's apartment. The judge stated he considered defendant's testimony illogical and inconsistent with the evidence presented by the State.

Defendant's witnesses, who testified they had seen him with a white girl having brown hair, did not identify the prosecutrix as that girl, except for William Jefferson. However, Susan Wydra, defendant's former girlfriend, testified in rebuttal it was she who was with defendant on that occasion.

We conclude the evidence presented in trial was sufficient to establish defendant's guilt beyond a reasonable doubt. *People v. Collier* (1978), 66 Ill. App. 3d 1007, 1010, 384 N.E.2d 497, 499, *appeal denied* (1979), 74 Ill. 2d 587.

Defendant also contends that the judgments entered on counts 1-8, 13, 14 and 16 must be vacated as multiple convictions in which more than one offense has been carved from single physical acts. Judgments of the conviction were entered under the following counts of the indictment for these offenses:

1. Rape, Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a).

2. Armed robbery (while armed with knife, took check and purse), Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a).

3. Intimidation (by threat of physical harm caused writing of check), Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(1).

4. Intimidation (by threat of physical harm if she fled apartment), Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(1).

5. Aggravated kidnaping (secretly confined against her will and committed rape), Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).

6. Aggravated kidnaping (secretly confined and committed armed robbery), Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).

7. Aggravated kidnaping (secretly confined and committed intimidation), Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).

8. Aggravated kidnaping (secretly confined and committed armed violence), Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3).

13. Aggravated kidnaping (secretly confined while armed with knife), Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(5).

14. Armed violence (while armed with knife committed armed robbery), Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

15. Armed violence (while armed with knife committed intimidation by threatening physical harm to cause writing of a check), Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

16. Armed violence (while armed with knife committed intimidation by threat of physical harm to cause her not to flee apartment), Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

17. Armed violence (while armed with knife committed aggravated kidnaping, by secretly confining and committing rape), Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

18. Armed violence (while armed with knife committed aggravated kidnaping, by secretly confining and committing armed robbery), Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.

Defendant was acquitted of other offenses charged in counts 9 through 12.

We have great difficulty in understanding why the State considered it necessary to charge defendant in this convoluted, repetitious manner. It carved 19 duplicative offenses from the four basic charges of rape, armed robbery, aggravated kidnaping and intimidation making trial, sentencing and review unnecessarily difficult and error almost certain, perhaps at all three stages.

Defendant was sentenced as follows:

Count 1. Rape, Class X, 60 years extended term.

Count 2. Armed robbery, Class X, 60 years extended term.

Count 3. Intimidation, Class 3, 10 years extended term.

Count 4. Intimidation, Class 3, 10 years extended term.

Count 13. Aggravated kidnaping, Class X, 30 years extended term.

Count 17. Armed violence, Class X, 60 years extended term.

Count 18. Armed violence, Class X, 60 years extended term.

Count 19. Armed violence, Class X, 60 years extended term.

Judgments of conviction were entered, but defendant was not sentenced, under counts 5 through 8, each charging aggravated kidnaping, and under counts 14 through 16, each charging armed violence. He was also sentenced for armed violence as charged in count 19 although a judgment of conviction was not entered as to that count.

We conclude that the judgments of conviction must be vacated as to the following counts:

Count 1 for rape

Counts 3 and 4 charging intimidation
Counts 5-8 and 13 for aggravated kidnaping
Counts 14 and 18 for armed violence.
Judgments of conviction were properly entered as to:
Count 2 for armed robbery and
Counts 15 through 17 for armed violence.

■ Multiple convictions for both armed violence and the underlying felony upon which it is predicated cannot stand where the same physical act is the basis for both charges. In that event, judgment should be entered and sentence imposed only for the more serious offense. *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; *People v. Myers* (1981), 85 Ill. 2d 281, 287, 426 N.E.2d 535, 538; *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

The underlying felonies of rape charged in count I, intimidation charged in counts 3 and 4, aggravated kidnaping charged in counts 5 though 8 and in count 13 were included within the armed violence offenses for which defendant was convicted under counts 15, 16 and 17, in which they were alleged as predicates, and must be vacated.

■ The judgments of conviction for armed violence entered under counts 14 and 18, for which sentences were not imposed, must also be vacated. Each of these counts constitute double enhancement as the predicate offenses were also enhanced by the presence of a weapon. (*People v. Haron* (1981), 85 Ill. 2d 261, 277-78, 422 N.E.2d 627, 634; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 1034, 412 N.E.2d 683, 687, *appeal denied* (1981), 85 Ill. 2d 559; see *Simpson v. United States* (1978), 435 U.S. 6, 14, 55 L. Ed. 2d 70, 78, 98 S. Ct. 909, 914.) The sentence imposed for armed violence under count 19 must be vacated as a judgment of conviction was not entered for the offense there charged.

In summary, defendant was validly convicted of armed robbery under count 2, in which an extended-term sentence of 60 years was imposed, and of armed violence under counts 15, 16 and 17. Sentences were not imposed under counts 15 and 16, and under count 17 he was sentenced to an extended term of 60 years.

Defendant contends the extended terms of imprisonment are improper, arguing that neither of the requisite statutory factors necessary for imposition of an extended term were present.

■ An extended term of imprisonment may be imposed where a defendant is convicted of any felony after having been previously convicted in Illinois "of the same or greater class felony, within ten years ***" or where "*** the offense was accompanied by exceptionally

brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(1), (2).) Defendant argues that as the trial court made no finding that defendant's conduct was exceptionally brutal or heinous that factor cannot provide a basis for the extended terms of imprisonment.

■ The trial court is not obliged to recite or assign a value to each fact upon which it relies in determining a sentence. (See *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) The sentencing judge noted he had considered the evidence produced in trial, the presentence report, matters presented in aggravation and mitigation, sentencing alternatives, arguments of the parties and the statement of the defendant. He concluded, *inter alia*, that the extended term provisions applied to this case. See *People v. La Pointe* (1982), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353; *People v. McFarland* (1981), 93 Ill. App. 3d 136, 143-44, 416 N.E.2d 769, 776; compare *People v. Lenninger* (1980), 88 Ill. App. 3d 801, 806-07, 410 N.E.2d 1157, 1162.

The record discloses defendant inflicted both mental and physical pain upon his victim. He repeatedly threatened her life with a knife and severely beat her although she had told him she was pregnant. The presentence report discloses that the young woman required medical and dental treatment and both she and her husband endured great emotional stress together with anxiety with regard to her pregnancy which continued long after the assault. We conclude the trial court properly considered the factors authorizing an extended term and did not abuse its discretion in imposing sentence. *People v. Clark* (1981), 102 Ill. App. 3d 414, 425, 429 N.E.2d 1255, 1263; *People v. Piontkowski* (1979), 77 Ill. App. 3d 994, 397 N.E.2d 36.

As the presence of one of the statutory factors is sufficient for imposition of an extended-term sentence (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318, *appeal denied* (1980), 81 Ill. 2d 595), we do not reach the issue of whether defendant's convictions for attempt murder and attempt armed robbery in 1970 would also provide a basis for an extended term.

Defendant has also filed a *pro se* brief in this court in which he has raised other issues not presented by the brief filed on his behalf by his counsel. Although Supreme Court Rules 341 and 612 (73 Ill. 2d Rules 341, 612) do not authorize an appellant to offer multiple briefs for review, we have, in this instance, considered the additional matters raised by defendant and find them to be without merit.

In imposing sentence under counts 1, 2, 3, 4, 13, 17, 18 and 19 the trial court did not state why it failed to sentence defendant for the other offenses for which he had been convicted. These unsen-

tenced convictions include armed violence charged under counts 15 and 16 to which we earlier referred. Although necessarily discussed in our analysis of the issues raised by defendant, he did not include counts 15 and 16 in his notice of appeal and they constitute unappealed and unsentenced convictions which the court has recently addressed in *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180. We conclude that the trial court failed to impose sentence under counts 15 and 16 believing that were precluded because of the relationship of those offenses to the sentenced offenses which defendant has appealed, thus authorizing remandment for sentencing.

Accordingly, the judgment of the circuit court is affirmed as to armed robbery charged in count 2 and armed violence charged in count 17. The cause is remanded with directions to impose sentence for armed violence under counts 15 and 16, to run concurrently with the sentences imposed under counts 2 and 17, and to vacate the convictions or sentences under counts 1, 3, 4, 5, 6, 7, 8, 13, 14, 18 and 19.

Affirmed in part; reversed in part and remanded.

REINHARD and VAN DEUSEN, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE NASH delivered the opinion of the court:

In its petition for rehearing the State requests we reconsider our order vacating defendant's conviction and sentence for rape under count 1 of the indictment and, instead, vacate the armed violence offense charged under count 17 in which rape was alleged, in part, as a predicate. The State agrees both convictions cannot stand in conjunction with one another (*People v. King* (1977), 66 Ill. 2d 551, 556, 363 N.E.2d 838, 844-45, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273), and suggests that in such cases judgment should be entered and sentence imposed only for the offense based upon the more specific statute on the subject matter, citing *People v. Clark* (1979), 71 Ill. App. 3d 381, 420, 389 N.E.2d 911, 939; *People v. Velleff* (1981), 94 Ill. App. 3d 820, 825-26, 419 N.E.2d 89, 93; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 889-90, 414 N.E.2d 25, 27; see also *People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627, 634; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 1034, 412 N.E.2d 683, 687, *appeal denied* (1981), 85 Ill. 2d 559.

Count 17 of the present case, however, charged armed violence

predicated on the commission of aggravated kidnaping while armed; it was not principally predicated upon the offense of rape as suggested by the State's argument. Rape was alleged in count 17, but only as the aggravating element enhancing the kidnaping of the victim to the more serious form of that offense.

■ A comparison of the statutes dealing with rape and kidnaping demonstrates they are not *in pari materia* (see, *e.g.*, *People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872), as they define separate offenses and prohibit different kinds of conduct. For that reason we may not apply to these offenses the rule of statutory construction urged by the State that a more specific statute will govern over a general statute dealing with the same subject matter. Compare *People v. Jones* (armed robbery is a more specific offense than is armed violence predicated upon armed robbery) and *People v. Crawford* (rape is more specific than armed violence predicated upon rape).

Nor do we find any basis in this circumstance to consider whether either of these offenses may be more serious than the other. (See *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479.) As charged in count 17, defendant was convicted of armed violence as a Class X felony and rape charged in count 2 is also in Class X.

The State has also requested we clarify whether a new sentencing hearing will be required in the trial court to carry out the direction on remand to impose sentences for armed violence under counts 15 and 16.

Yes, a sentencing hearing is required at which the trial court may consider those matters offered at the original sentencing hearing and any relevant additional evidence offered by the State or defendant.

Accordingly, we adhere to the opinion and rehearing is denied.

REINHARD and VAN DEUSEN, JJ., concur.